SUSAN M. CHEHARDY, Judge.
 

 |2This is a personal injury lawsuit in which the plaintiff seeks reversal of a judgment that found his claims against one of the defendants prescribed. We affirm.
 

 FACTS
 

 According to the pleadings, in August 1998 Rock P. Kampmann sought treatment from West Jefferson Mental Health Clinic for depression, suicidal thoughts, inability to control his emotions, and alcohol abuse. On August 20, 1998 he was seen by Dr. Helen Mason, who prescribed Zoloft for depression and Trazodone for sleep. Mr.
 
 *677
 
 Kampmann filled the prescriptions at the West Jefferson Mental Health Clinic’s pharmacy the same day and took the medications as prescribed, including taking one tablet of Trazodone 30 minutes before bedtime.
 
 [1]
 
 Mr. Kampmann was not informed by either the doctor or the pharmacist that priapism is a side effect of Trazodone.
 

 On the morning of September 1, 1998, Mr. Kampmann awoke with an erection that persisted throughout that day and during the night. By the next day his penis was painful and stiff; it appeared white, then bluish, and was cold to the touch. On September 2, 1998 he went to the emergency room of a nearby hospital, |sand later to another hospital. He was diagnosed as having Trazodone-induced priapism.
 

 Mr. Kampmann was hospitalized for 13 days, and ultimately underwent four emergency procedures. He sustained a hernia as a result of one procedure, and eventually underwent surgery for a penile implant. The surgery caused additional damage to his penis. Mr. Kampmann was 41 years old at the time he first experienced the priapism.
 

 On March 30, 1999 Mr. Kampmann filed a complaint with the Patients’ Compensation Fund (“PCF”) against Dr. Helen Mason, a psychiatrist, and Josephine Ham-bacher, a pharmacist, asserting they were negligent in their treatment of him. He requested a medical review panel.
 

 On February 5, 2003 the medical review panel rendered its opinion, finding the evidence did not support the conclusion that the Ms. Hambacher failed to meet the applicable standard of care as charged in the complaint, or that Dr. Mason failed to meet the applicable standard of care on the issue of prescribing Trazodone. The panel found, however, “there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the Court, as to whether Mr. Kampmann was informed of the risk of priapism by Dr. Mason.” Counsel for Mr. Kampmann received the medical review panel’s opinion on February 7, 2003.
 

 On March 18, 2003 Mr. Kampmann filed suit against Dr. Mason and Ms. Hambacher for medical malpractice and negligence. Mr. Kampmann asserted he was left with pain, scarring, disfigurement, and permanent injury to his penis. He sought recovery for physical pain and suffering, mental anguish and emotional distress, severe trauma and damage to his body, and various economic losses.
 

 |4On August 4, 2003, Mr. Kampmann filed a First Supplemental and Amending Petition adding as a defendant Sidmak Laboratories, Inc. (“Sidmak”), alleged to be the manufacturer of the Trazodone he took. He alleged that Trazodone was unreasonably dangerous because an adequate warning had not been provided to doctors and pharmacies; the warning fails to clearly and unambiguously notify the prescribing physicians and/or pharmacist of a particular adverse reaction and/or side effect. He alleged that Sidmak failed to reasonably inform prescribing physicians and/or pharmacists of the dangers of harm from such drugs despite its knowledge thereof and its decision to revise its package inserts and warnings to specifically identify priapism. He asserted the warning provided to him did not advise or lead him to contemplate the danger of this side effect and to either use it safely by instruction as to what to do in the event of the side effect or to decline to use it. He alleged that
 
 *678
 
 Mason, Hambacher, and Sidmak are joint tortfeasors.
 

 Sidmak twice sought to be dismissed from the suit via motions for summary-judgment, asserting its warning of the side effects of Trazodone was adequate, but was unsuccessful. The trial court granted summary judgment on Sidmak’s first motion, but that was reversed on appeal.
 
 Kampmann v. Mason,
 
 05-423, pp. 7-8 (La.App. 5 Cir. 1/17/06), 921 So.2d 1093, 1096. Sidmak later filed a second motion for summary judgment on the same ground, but the trial court denied summary judgment on the basis the affidavits provided did not address dissemination of the warning to prescribing physicians, and Sidmak had failed to offer any evidence to show it made a reasonable attempt to notify the plaintiffs doctor of the risk of priapism associated with Trazodone.
 

 On May 17, 2007 Sidmak filed a third Motion for Summary Judgment, this time seeking dismissal on the ground that it was not the manufacturer of the | sTrazodone the plaintiff took in August 1998 that allegedly caused his priapism and the resulting damages. Rather, the inscriptions on the pills produced by the plaintiff as exhibits (“MP 114”) indicate the tablets were sold and manufactured by United Research Laboratories a/k/a Mutual Pharmaceutical Company.
 

 As a result of Sidmak’s information, on June 29, 2007 the plaintiff filed a Third Supplemental and Amending Petition.
 
 [2]
 
 He alleged he had recently discovered that Mutual Pharmaceutical Company, Inc. (hereafter “Mutual”) is a joint tortfeasor and he wished to substitute Mutual in place of Sidmak Laboratories, Inc. as defendant in all of the preceding pleadings. He reiterated and re-alleged against Mutual all the allegations made in the prior pleadings. On the same date, the district court rendered judgment granting summary judgment in favor of Sidmak.
 

 Mutual filed an Exception of Prescription, in which it asserted any claims against it had prescribed. Mutual asserted that the plaintiff had one year from the date of injury or, alternatively, 90 days from the date the medical review panel issued its opinion in which to file suit against Mutual. Because Mutual was not named a defendant until June 29, 2007, Mutual asserted the claims against it are prescribed.
 

 After a hearing on the exception of prescription, at which neither party introduced any evidence, the district court granted the exception. In written reasons incorporated in the judgment, the court concluded Mutual is not a health care provider subject to the Medical Malpractice Act but, pursuant to La.R.S. 40:1299.47(A)(2)(a), prescription was suspended against Mutual only for 90 days following notification of Mr. Kampmann of the medical review panel’s decision. | (jThus, the court found, the plaintiff had until October 2003 to file suit against any alleged joint tortfeasor, but his suit was not amended to name Mutual as a defendant until June 29, 2007. The court also found that Mr. Kampmann reasonably could have obtained the identity of the correct manufacturer prior to learning the identity from Sidmak. Based on those facts, the court granted the exception of prescription.
 

 On November 5, 2007 the district court rendered a partial final judgment that dis
 
 *679
 
 missed Mutual from the lawsuit. The plaintiff seeks review.
 

 ASSIGNMENTS OF ERROR
 

 On appeal Mr. Kampmann raises the following assignments of error (quoted verbatim from the appellant’s brief):
 

 1. The District Court was manifestly erroneous in granting a non health care provider the opportunity to bootleg into the immunities and advantages intended for and extended solely to health care providers.
 

 2. The District Court was manifestly erroneous in ruling in a manner which would prejudice defendant State of Louisiana and its people when the limiting rules in the LMMA and LRS 9:5628 were designed to benefit them.
 

 3. The District Court was manifestly erroneous in not reading the LMMA, LRS 9:5628, and general co-dal authority in context with each other.
 

 4. The District Court was manifestly erroneous in not rendering a decision which was fair, just, and logical and which could be used in future decisions to produce such results.
 

 The plaintiff asserts the harm he suffered was caused by all the defendants collectively, making them joint tortfeasors. Specifically, Dr. Mason, his treating physician, failed to inform him of the side effects of the drug she prescribed; Ms. Hambacher, the pharmacist who filled the prescription, failed to provide an 17adequate warning that included the exact type of harm from which he suffered; Mutual, the manufacturer of the drug, failed to provide an adequate warning to learned intermediaries, including the treating physician, that the drug could cause the exact type of harm suffered by the plaintiff.
 

 The plaintiff asserts that on September 20, 2001 he forwarded interrogatories to defendants West Jefferson Mental Health Center and Dr. Mason, in which he requested the name and contact information of the manufacturer(s) of the drug known as Trazodone, dispensed by Region Ten Pharmacy and prescribed by Dr. Mason to the plaintiff in August 1998. The defendants responded to the interrogatory on October 22, 2001, stating the brand of Tra-zodone dispensed to the plaintiff was manufactured by Sidmak Laboratories, Inc. Relying on that information, the plaintiff amended his original petition to name Sid-mak defendant as the manufacturer of the drug. In opposition to the determination of prescription, therefore, the plaintiff asserts the doctrine of contra non valentum applies.
 

 The plaintiff contends he was prevented from suing the proper drug company because the defendant health care providers who prescribed the medication and filled the prescription gave him the name of the wrong drug manufacturer as the source of the drug that caused harm to the plaintiff. He points out that the initial defendant, Sidmak, litigated this case for several years before it discovered it was not the manufacturer of the particular drug at issue.
 

 In opposition to the appeal, Mutual asserts that the claim against it was prescribed on its face when the third amending and supplemental petition naming it a defendant was filed. Specifically, the plaintiff did not file his complaint against the health care providers with the Patients’ Compensation Fund until April 1, 1999, 211 days after he was diagnosed with Trazodone-induced priapism. The medical review panel’s opinion was sent to counsel for plaintiff via certified mail on | ^February 6, 2003, and counsel received it on February 7, 2003. The lawsuit was
 
 *680
 
 filed on March 18, 2008, against Mason and Hambacher only. The first amended and supplemental petition, naming Sidmak Laboratories, Inc. as manufacturer, as filed on August 8, 2003.
 

 On May 1, 2007, during the plaintiffs deposition, counsel for Sidmak first inspected the bottle of Trazodone pills in plaintiffs possession. On visual inspection Sidmak’s representatives realized those pills had not been manufactured by Sid-mak, because they differed in the marking on the faces of the tablets. Within two weeks Sidmak filed the motion for summary judgment on which it was eventually dismissed from the lawsuit.
 

 LAW AND ANALYSIS
 

 “Delictual actions under Louisiana law generally prescribe within one year of the date the injuries or damage was sustained. La.C.C. art. 3492.”
 
 Denoux v. Vessel Management Services, Inc.,
 
 2007-2143, p. 5 (La.5/21/08), 983 So.2d 84, 88.
 

 The burden of proof on an exception of prescription initially lies with the party asserting it, but the burden shifts to the plaintiff if it is apparent from the face of the petition that his claims are prescribed.
 
 Mallett v. McNeal,
 
 05-2289, p. 5 (La.10/17/06), 939 So.2d 1254,1258.
 

 Although Mutual is not a health care provider subject to the Louisiana Medical Malpractice Act (“LMMA”), LMMA provides that the running of prescription is suspended during proceedings before a medical review panel, not only for qualified health care providers but also for any parties solidarity or jointly liable. La.R.S. 40:1299.47. The suspension ends ninety days after the claimant is notified of the medical review panel’s decision:
 

 | ¡)The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, ... until ninety days following notification, by certified mail, ... to the claimant or his attorney of the issuance of the opinion by the medical review panel....
 
 The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obli-gors, and all joint tortfeasors, including but not limited to health care providers,
 
 both qualified and not qualified,
 
 to the same extent that prescription is suspended against the party or parties that are the subject of the request for review.
 
 [Emphasis added.]
 

 La.R.S. 40:1299.47(2)(a).
 
 [3]
 
 Thus, the suspension of prescription provided under the LMMA applies not only to health care providers, but also to any joint or solidary tortfeasors.
 

 “The period of suspension is not counted toward accrual of prescription. Prescription commences to run again upon the termination of the period of suspension.” La.C.C. art. 3472.
 

 When the ninety-day period of suspension after the decision of the medical review panel is completed, plaintiffs in medical malpractice actions are entitled to count the period of time that remains unused at the time the request for a medical review panel is filed.
 
 Guitreau v. Kucharchuk,
 
 1999-2570, p. 1 (La.5/16/00), 763 So.2d 575, 576. “[W]hen the ninety day period expires, the period of suspension
 
 *681
 
 terminates and prescription commences to run again. Once prescription begins to run again, counting begins at the point at which the suspension period originally began.”
 
 Guitreau,
 
 1999-2570 at 6, 768 So.2d at 579.
 

 So long as a medical malpractice suit is timely filed as to a qualified health care provider, it will be timely filed as to a non-qualified health care provider if they are joint or solidary obligors.
 
 Williams v. Northgate Hosp.,
 
 1998-1477 |10(La.App. 3 Cir. 5/5/99), 734 So.2d 1251,
 
 writ denied,
 
 1999-1588 (La.9/17/99), 747 So.2d 565.
 

 Although a medical malpractice suit against one solidary obligor interrupts prescription as to other solidary obligors, prescription cannot be interrupted once it has accrued.
 
 Tuazon v. Eisenhardt,
 
 98-666 (La.App. 5 Cir. 12/16/98), 725 So.2d 553,
 
 writ denied,
 
 1999-0144 (La.3/12/99), 739 So.2d 209.
 

 In this case, prescription began running on September 2, 1998, when Mr. Kamp-mann was diagnosed with priapism. His medical review panel request was filed 211 days later, leaving 154 days still to run on prescription. The opinion of the medical review panel was issued on February 5, 2003, and sent to the plaintiffs counsel by certified mail that date. Prescription was suspended, therefore, for another 90 days, or until May 6, 2003. The remainder of the one-year period expired on or about October 7, 2003. Mr. Kampmann did not amend his petition to name Mutual until June 29, 2007.
 

 Although the petition was amended to name Sidmak in August 2003, due to Sid-mak’s dismissal from the suit Mutual cannot be considered a joint tortfeasor. Hence, the filing of suit against Sidmak cannot work in the plaintiffs favor.
 

 In an ordinary tort suit not subject to the LMMA, filing of suit against one joint tortfeasor interrupts prescription as to other joint tortfeasors, and serves as a continuing interruption during the pen-dency of the suit. La.C.C. arts. 2324(C), 3462, 3463. However, “the specific provisions of the Medical Malpractice Act regarding the suspension of prescription against joint tortfeasors apply to the exclusion of the general code article on interruption of prescription against joint tort-feasors, LSA-C.C. 2324(C).”
 
 Borel v. Young,
 
 2007-0419, p. 27 (La.11/27/07), 989 So.2d 42, 68.
 

 |uIn the alternative the plaintiff invokes the doctrine of
 
 contra non valentem,
 
 on the ground he was misled by the actions of Sidmak and the other defendants.
 
 Contra non valentem non currit
 
 praescriptio
 
 [4]
 
 is a jurisprudential doctrine developed to soften the occasional harshness of prescriptive statutes.
 
 Carter v. Haygood,
 
 2004-0646, p. 11 (La.1/19/05), 892 So.2d 1261, 1268.
 

 There are four instances where
 
 contra non valentem
 
 is applied to prevent the running of prescription:
 

 (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiffs action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.
 

 Carter,
 
 2004-0646 at 11-12, 892 So.2d at 1268. These categories allow the courts
 
 *682
 
 “to weigh the ‘equitable nature of the circumstances in each individual case’ to determine whether prescription will be tolled.”
 
 Id.,
 
 2004-0646 at 12, 892 So.2d at 1268.
 

 Under the doctrine of
 
 contra non valen-tem,
 
 prescription does not run against a person when “the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.”
 
 Corsey v. State of La. through the Dep’t of Corrections,
 
 375 So.2d 1319, 1322 (La.1979).
 

 Here, however, Mr. Kampmann failed to show that he could not reasonably have discovered the true identity of the manufacturer of the Trazodone he took. According to the pleadings, the pills are marked with information that indicates the manufacturer. Information about the identity of the manufacturer was as readily 112available to the plaintiff as to the defendants. We find no merit to the
 
 contra non valentem
 
 arguments.
 

 We find no merit to the plaintiffs arguments that the LMMA cannot be applied to Mutual. As discussed above, the plaintiff alleges that Mutual is jointly liable with the health care providers in this case. As such, the prescriptive period against Mutual is governed by the provisions of the LMMA.
 

 DECREE
 

 For the foregoing reasons, the judgment is affirmed. Costs of this appeal are assessed against the plaintiff-appellant.
 

 AFFIRMED.
 

 [1]
 

 . Trazodone is the generic form of an antidepressant medication that is also sold under various trade names, such as Desyrel.
 

 [2]
 

 . In a Second Supplemental and Amending Petition filed on January 10, 2006, the plaintiff added as defendants West Jefferson Mental Health Clinic; Regions Ten Pharmacy; Human Services Authority for the Parish of Jefferson, State of Louisiana; and State of Louisiana, Department of Health and Hospitals.
 

 [3]
 

 . The prescriptive period for actions under the Medical Malpractice Act is set out in La.R.S. 9:5628(A), as “one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.”
 

 [4]
 

 . "Prescription does not run against a person who could not bring his suit."