SUSAN M. CHEHARDY, Judge.
 

 |aThe plaintiff seeks reversal of a summary judgment that dismissed his claims against a pharmacist for failure to warn him of the side effects of a medication dispensed to him. We affirm.
 

 FACTS
 

 We incorporate the statement of the facts set out in a prior appeal:
 

 According to the pleadings, in August 1998 Rock P. Kampmann sought treatment from West Jefferson Mental Health Clinic for depression, suicidal thoughts, inability to control his emotions, and alcohol abuse. On August 20, 1998 he was seen by Dr. Helen Mason, who prescribed Zoloft for depression and Trazodone for sleep. Mr. Kamp-mann filled the prescriptions at the West Jefferson Mental Health Clinic’s pharmacy the same day and took the medications as prescribed, including taking one tablet of Trazodone 30 minutes before bedtime. Mr. Kampmann was not informed by either the doctor or the pharmacist that priapism is a side effect of Trazodone.
 

 On the morning of September 1, 1998, Mr. Kampmann awoke with an erection that persisted throughout that day and during the night. By the next day his penis was painful and stiff; it appeared white, then bluish, and was cold to the touch. On September 2, 1998 he went to the emergency room of a nearby hospital, and later to another hospital. He was diagnosed as having Trazodone-in-duced priapism.
 

 Mr. Kampmann was hospitalized for 13 days, and ultimately underwent four emergency procedures. He sustained a hernia as a result of one procedure, and |seventually underwent surgery for a penile implant. The surgery caused additional damage to his penis. Mr.
 
 *414
 
 Kampmann was 41 years old at the time he first experienced the priapism.
 

 Kampmann v. Mason,
 
 08-508, pp. 2-3 (La.App. 5 Cir. 1/13/09), 7 So.3d 675, 676-677,
 
 writ denied,
 
 2009-0319 (La.4/3/09), 6 So.3d 775 (hereafter
 
 “Kampmann II”).
 

 PROCEEDINGS BELOW
 

 Rock Kampmann filed a complaint pursuant to La. R.S. 40:1299.43 and the matter was presented to a medical review panel. The medical review panel determined the evidence did not support the conclusion that the pharmacist, Josephine Hambacher, failed to meet the applicable standard of care as charged in the complaint, as follows:
 

 Ms. Hambacher, the pharmacist, properly dispensed the medication as prescribed and followed the standard protocol by providing the information to the patient and having him sign that he had read and received the medication information sheet.
 

 The literature provided to the patient by West Jefferson Mental Health Center correctly warned the patient of “other side effects”; and to consult with the doctor should “any other effects” occur.
 

 The panel also found the evidence did not support the conclusion that the physician, Dr. Helen Mason, failed to meet the applicable standard of care on the issue of prescribing trazodone. The panel found, however, “there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the Court, as to whether Mr. Kampmann was informed of the risk of priapism by Dr. Mason.”
 

 Kampmann filed suit against various parties to recover damages for the injuries that resulted from the trazodone prescribed to him.
 
 [1]
 
 The lawsuit named as defendants Dr. Helen Mason, his treating/prescribing physician at West Jefferson 14Mental Health Clinic; West Jefferson Mental Health Center, Dr. Mason’s employer; Josephine Hambacher, the pharmacist who dispensed the prescription for trazodone;
 
 [2]
 
 Region Ten Pharmacy, the in-house pharmacy of West Jefferson Mental Health Center that was Hambacher’s employer; and the State of Louisiana, Department of Health and Hospitals, Human Services Authority for the Parish of Jefferson, which operated West Jefferson Mental Health Center and Region Ten Pharmacy. Kampmann also named the alleged manufacturer of the medication, but his suit against the manufacturer ultimately was dismissed.
 
 [3]
 

 Kampmann alleged that Hambacher and Region Ten Pharmacy were negligent for “failure to reasonably implement the assumed responsibility of providing necessary information” for Kampmann “to be informed of the risk of priapism and the appropriate conduct should the risk manifest itself’; failure to provide him with warnings required by the FDA and/or other regulatory agencies; and failure to provide him “with warnings which were dictated by First Data Bank and/or other
 
 *415
 
 information systems used by defendant for the purposes of keeping informed of current warnings required.”
 

 Kampmann also alleged that Hambacher and Region Ten Pharmacy are liable to him for negligent impairment of his product liability claim against the manufacturer of the trazodone, in that he originally sued the wrong drug manufacturer when he relied on information given under oath by the defendants in response to an interrogatory. Although Kampmann eventually determined the | .-¡correct manufacturer and amended to add that company as a defendant, the manufacturer was dismissed on an exception of prescription.
 
 [4]
 

 Kampmann alleged that Hambacher and Region Ten Pharmacy had a statutory duty to keep accurate records of the manufacturers, wholesalers, distributors, brokers, or other sources of supply, and to provide truthful and accurate answers to discovery, and that the breach of these duties was the sole or contributing cause of the loss of his product liability claim. (This allegation is referred to as the claim for spoliation of evidence.)
 

 Hambacher and Region Ten Pharmacy filed a motion for summary judgment, asserting they were entitled to judgment as a matter of law because neither Hambacher nor Region Ten Pharmacy had a duty to warn Kampmann of adverse side effects that may have occurred as a result of his prescribed medication. Rather, they asserted, their only duty was to ensure that the prescription was filled properly and to check with the prescribing doctor if there were any apparent errors or mistakes in the prescription itself.
 

 In opposition to summary judgment, Kampmann asserted the matter is not ripe for summary judgment because the following facts are disputed: (1) whether defendants knew or should have known that Rock Kampmann was being treated for alcohol abuse, but did not counsel him that alcohol could increase the risk of priapism; (2) whether defendants supplied an outdated warning insert to plaintiff; (3) whether defendants provided a warning to plaintiff that did not meet FDA requirements; (4) whether the required FDA warning, at the time of the incident herein, warned of a link between trazodone and priapism; (5) whether the warning provided to plaintiff by defendants made any mention of the word
 
 priapism,
 
 much less any discussion of a link between trazodone and priapism; and (6) whether ^defendants provided false or incorrect information to plaintiff, causing him to name the wrong defendant drug company, and thereby causing his product liability claim to become prescribed.
 

 In response Hambacher and Region Ten Pharmacy argued that Kampmann’s Disputed Material Fact No. 1 is immaterial to the motion for summary judgment, and was not properly before the court because it was raised for the first time in opposition to the motion for summary judgment rather than in the original petition or the several supplemental and amending petitions.
 

 As to Kampmann’s Disputed Material Facts Nos. 2 through 6, Hambacher and Region Ten Pharmacy contended that even accepting them as true, the plaintiff cannot maintain his case because they did not have a duty to warn under the facts of this case.
 

 The district court granted the motion for summary judgment, ruling from the bench
 
 *416
 
 that “a pharmacist has no duty to explain or warn customers of hazardous side effects associated with the drug.... There is no assumption of a gratuitous duty to warn.” The court noted that the “administrative code expands that duty,” but “Louisiana law just has not at this point expanded that duty to pharmacists.” As to the issue of spoliation, the court stated, “[T]here is no such thing in Louisiana law as negligent spoliation. I will note for the record that the plaintiff in this case had the pills in his possession for the entire case. The plaintiff had every opportunity to determine who the proper manufacturer of the drug was, and they relied upon defense’s answers when they had the evidence within their own possession.”
 

 In subsequent written reasons for judgment, the court elaborated on its oral holdings as follows:
 

 [7[A] pharmacist has no duty to warn of potential adverse effects under any of the cited Louisiana jurisprudence. [Citing
 
 Gassen
 
 and
 
 Guillory, infra,]
 
 Instead, the law places that duty on the prescribing physician because he is the “informed intermediary between the manufacturer and the patient.” Kamp-mann, therefore, will be unable to prove one of the essential elements of his action against Hambacher and Region Ten.
 

 Kampmann asserts that Hambacher knew or should have known that he was an alcoholic. He relies on
 
 Hand v. Krakowski,
 
 89 A.D.2d 650, 453 N.Y.S.2d 121 (1982) for the proposition that this knowledge imposed a duty on Hambacher to warn him about the risks associated with priapism.... In the
 
 Hand
 
 case, ... [t]he New York appellate court held that where the pharmacist had actual knowledge that the customer was an alcoholic and that the prescribed medication was contraindicated for alcoholics, there was a duty to warn the customer of the serious danger involved in his taking the medication. The
 
 Hand
 
 decision has never been adopted or applied in Louisiana. While it is noted in
 
 Gas-sen, Hand’s
 
 holding is contrary to rule enunciated therein.
 

 Furthermore, even had Louisiana adopted
 
 Hand,
 
 under its holding Ham-bacher would only have had a duty to warn Kampmann of those side effects associated with drinking alcohol while taking the medication, and not every possible side-effect. There is no indication that drinking alcohol while taking Trazodone exacerbated the risk of priapism, or that Hambacher somehow knew that Kampmann was at a particular risk for priapism.
 

 As to Kampmanris claim for spoliation of evidence or, alternatively, impairment of a civil action by the defendants’ negligently or intentionally naming the wrong trazo-done manufacturer, the court stated:
 

 A plaintiff must allege an intentional destruction of evidence to assert a cognizable claim for spoliation of evidence. Allegations of negligent conduct are insufficient. However, more recent case law has noted an exception to the intent requirement in situations where the law imposes an affirmative duty to preserve, usually statutory.
 

 Negligent impairment of a civil action is a related, but broader action than spoliation. It requires that all the elements of negligence be proven. Both causes of action are premised on the right of a plaintiff to be free from ^interference in pursuing and/or proving his or her lawsuit. [Citations omitted.]
 

 Hambacher points to a lack of eviden-tiary support for some of the required elements of Kampmann’s claims herein; specifically, intent to destroy, duty to preserve, and causation. Although the
 
 *417
 
 hearing on this summary judgment was continued giving Kampmann ample time to reply, no evidence was submitted which would rebut Hambacher’s assertion.
 

 Furthermore, Kampmann’s claims for spoliation and negligent impairment are not appropriate herein where no evidence was destroyed. The “evidence” at issue is merely the identity of the proper defendant-manufacturer. The Court has already found that this information was as readily available to Kampmann during the pendency of this suit as it was to the defendants.
 

 Kampmann has appealed. He asserts the trial court erred in granting the summary judgment for the following reasons:
 

 1. The defendants had a duty to counsel, inform, or warn plaintiff/appellant that trazodone was contraindicated for his use and that priapism was a side effect of the drug;
 

 2. Because plaintifiyappellant was an alcoholic, there was a heightened or additional duty to warn plaintiff/appellant of the dangerous propensities of trazodone;
 

 3. The defendants/appellees assumed a duty to counsel, warn, or inform plaintiff/appellant that he was prescribed a contraindicated drug and that priapism is a side effect of the drug or to consult with his prescribing physician regarding the contraindication of the drug;
 

 4. Defendants/appellees are solely and/or comparatively/contributorily liable for negligent impairment of plaintiff/appellant’s product liability claim.
 

 FLAW AND ANALYSIS
 

 The summary judgment procedure is “designed to secure the just, speedy, and inexpensive determination” of action and it “shall be construed to accomplish these ends.” La. C.C.P. art. 966(A)(2). “The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B).
 

 The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
 

 La. C.C.P. art. 966(C)(2).
 

 Appellate courts review a judgment granting or denying a motion for summary judgment
 
 de novo. Cutsinger v. Redfern,
 
 2008-2607, p. 4 (La.5/22/09), 12 So.3d 945, 949. Thus, appellate courts ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law.
 
 Id.
 

 Kampmann centers his argument on the Louisiana Administrative Code, which provides for patient counseling by pharmacists, defined as “the effective communication by a pharmacist of infor
 
 *418
 
 mation to the patient or caregiver, in order to ensure proper use of drugs and devices.” LAC 46:LIII.517.A. It states, “At a |inminimum, the pharmacist should be convinced that the patient or caregiver is informed of the following: ... common severe side effects or adverse effects or interactions and therapeutic contraindications that may be encountered, including their avoidance, and the action required in the event of their occurrence.... ” LAC 46:LIII.517(B).
 

 We disagree with the plaintiffs premise that violation of the Administrative Code is negligence per se, or that the LAC rules in themselves impose on the pharmacist a duty to third parties. The rules are enacted by the Board of Pharmacy under the Administrative Procedure Act, pursuant to its authority to control and regulate the practice of pharmacy. La. R.S. 37:1182.
 

 Louisiana’s Administrative Procedure Act (“LAPA”) is set forth in La. R.S. 49:950 et seq. LAPA was enacted to establish certain procedures for state agencies for adoption of rules, adjudication of matters, and judicial review of administrative rulings. Specifically, LAPA sets forth the procedures requiring and governing the adoption of rules by each agency for that agency.
 

 [[Image here]]
 

 The LAPA defines a rule as a “statement, guide or requirement for conduct or action ... which has general applicability and the effect of implementing or interpreting substantive law or policy, or which prescribes the procedure or practice requirements of the agency.”
 

 Women’s and Children’s Hosp. v. State, Dept. of Health and Hospitals,
 
 2008-946, pp. 5-6 (La.1/21/09), 2 So.3d 397, 401. The rules in the Administrative Code provide guidance for pharmacists licensed by the Board, and serve as the foundation for disciplinary proceedings by the Board of Pharmacy against holders of pharmacy licenses.
 
 See
 
 La. R.S. 37:1241-1243. They do not, however, establish liability in tort to third parties.
 

 In Louisiana, liability for negligence is determined by the duty-risk analysis. To establish liability for damages in a negligence case, the plaintiff is required to | nprove the following: (1) that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) that the defendant’s conduct failed to conform to the appropriate standard (the breach element); (3) that the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) that the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); (5) proof of actual damages (the damages element).
 
 Detraz v. Lee,
 
 2005-1263, p. 2 (La.1/17/07), 950 So.2d 557, 565.
 

 Because the applicable substantive law determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. The duty-risk analysis is the standard negligence analysis employed in determining whether to impose liability under LSA-C.C. art. 2315. This approach provides an analytical framework for evaluation of liability. One analysis requires proof by the plaintiff of five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant’s conduct failed to conform to the appropriate standard (the breach element); (3) the defendant’s substandard conduct was a cause in fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of
 
 *419
 
 protection element); and (5) the actual damages (the damages element). A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability.
 

 A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. Whether a duty is owed is a question of law. In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty. [Citations omitted.]
 

 Lemann v. Essen Lane Daiquiris, Inc.,
 
 2005-1095, pp. 7-8 (La.3/10/06), 923 So.2d 627, 632-633.
 

 112Under current Louisiana jurisprudence, the physician rather than the pharmacist bears the onus to prescribe correct medications for a patient, as well as to warn the patient of side effects:
 

 “A pharmacist has a duty to fill a prescription correctly and to warn the patient or to notify the prescribing physician of an excessive dosage or of obvious inadequacies on the face of the prescription which create a substantial risk of harm to the patient.”
 
 Guillory v. Dr. X,
 
 96-85, p. 10 (La.App. 3 Cir. 8/28/96), 679 So.2d 1004, 1010,
 
 citing Hayes v. Travelers Ins. Co.,
 
 609 So.2d 1084 (La.App. 2 Cir.1992),
 
 writ denied,
 
 613 So.2d 975 (La.1993);
 
 Hendricks v. Charity Hospital of New Orleans,
 
 519 So.2d 163 (La.App. 4 Cir.1987).
 

 A pharmacist has a duty to accurately fill a prescription and to be alert for clear errors or mistakes in the prescription, but the pharmacist does not have a duty to question a judgment made by the physician as to the propriety of a prescription, or to warn customers of the hazardous side effects associated with a drug, either orally or by way of the manufacturer’s package insert.
 
 Gassen v. East Jefferson General Hosp.,
 
 628 So.2d 256, 259 (La.App. 5 Cir.1993),
 
 quoting McKee v. American Home Products Corp.,
 
 113 Wash.2d 701, 782 P.2d 1045, 1055-56 (1989).
 

 With regard to the argument that defendants are liable for negligent impairment of the plaintiffs product liability claim against the manufacturer, we reiterate that this information was as readily available to Kampmann during the pendency of this suit as it was to the defendants.
 
 Kampmann II,
 
 08-508 at 13, 7 So.3d at 682. Hence, the claim for spoliation also must be dismissed.
 

 11SDECREE
 

 Considering the above, we find no merit to the assignments of error. The trial court did not err in granting summary judgment. Accordingly, the judgment is affirmed. Costs of this appeal are assessed against the plaintiffiappellant.
 

 AFFIRMED.
 

 [1]
 

 . The generic name for the drug is trazodone. It also is sold under the trade name Desyrel and other brand names.
 

 [2]
 

 . During the course of the litigation, Josephine Hambacher died. Her succession representative, Timothy Hambacher, has been substituted as defendant in her place. For consistency, however, we continue to refer to that defendant as "she,” "Hambacher,” and "Ms. Hambacher.”
 

 [3]
 

 .In
 
 Kampmann v. Mason,
 
 05-423 (La.App. 5 Cir. 1/17/06), 921 So.2d 1093, (hereafter
 
 “Kampmann
 
 I"), we reversed a summary judgment in favor of the manufacturer and remanded for further proceedings. In
 
 Kamp-mann II, supra,
 
 we affirmed a judgment granting an exception of prescription as to the manufacturer.
 

 [4]
 

 . The actual manufacturer of the trazodone in this case was United Research Laboratories a/k/a Mutual Pharmaceutical Company.